UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| JAMES MANUEL ROMERO, | ) | |
|---|---|---|
| Plaintiff, | ) | Civil No. 10-35-ART |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| HARLEY G. LAPPIN, et al., | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Qualified immunity shields government officials from liability for monetary damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defendants in this case, officials and guards at a federal penitentiary, removed a length of green string from an inmate's prayer feather. Because doing so did not violate one of the inmate's "clearly established" rights, the defendants' motion for summary judgment is granted.

### BACKGROUND

James Manuel Romero participated in a violent carjacking and robbery in New Mexcio in 1994. *See United States v. Romero*, 122 F.3d 1334, 1336-37 (10th Cir. 1997). He received a life sentence in federal prison for that crime. *Id.* On July 30, 2009, Romero was transferred to the United States Penitentiary-McCreary ("USP-McCreary") in Pike Knot, Kentucky. Romero remained at USP-McCreary until July 8, 2010, when he was transferred to another facility. This case arises out of Romero's one-year stay at USP-McCreary.

Romero follows Native American religious practices. He arrived at USP-McCreary with several religious items, including an eagle feather. The eagle feather had a length of green wool string attached to it, measuring between eighteen and twenty-four inches. Prison authorities decided that Romero could have the feather in his cell but that the string posed a security risk and had to be removed. Correctional Officer Bobbie Chitwood removed most of the string from the feather, leaving a few inches still attached. R. 17-4. When prison guards tried to give the feather to Romero, he refused to accept it, contending that the guards had desecrated the feather and diminished its religious significance by removing the string. Romero challenged the removal of the string through internal prison grievance procedures. Authorities denied his grievance at each level.

On February 1, 2010, Romero filed a lawsuit in this Court under the First Amendment (through *Bivens*), the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*., and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq*. R. 2. Romero named ten different individuals at all levels of the Bureau of Prisons ("BOP") as defendants, from employees at the BOP's national and regional offices all the way down to individual correctional officers at USP-McCreary. *Id*. After screening Romero's complaint, as required by 28 U.S.C. § 1915A, the Court dismissed his RLUIPA claim. R. 8. The Court also dismissed seven of the ten defendants because Romero had not alleged their direct involvement in the removal of the string. *Id*. The Court therefore only allowed Romero's First Amendment and RFRA claims against three defendants—Associate Warden Ronald McLeod, Lieutenant Terry Baker, and Correctional Officer Bobbie Chitwood—to survive. *Id*.

The remaining defendants filed a motion to dismiss or, in the alternative, for summary judgment on October 19, 2010. R. 17. The Court denied the defendants' motion to dismiss and deferred ruling on their motion for summary judgment until Romero had an opportunity to submit evidence establishing an indispensible component of both his First Amendment and RFRA claims—that removing the green string substantially interfered with the exercise of his religion. R. 24. The Court gave Romero several months to submit this evidence. After receiving two extensions of time from the Court, R. 28, 32, Romero submitted affidavits from himself and four other prisoners who have experience with Native American religious practices stating that removing the green string desecrated the feather and destroyed its religious value. R. 33.

## DISCUSSION

The defendants in this case are federal officials who are being sued for the performance of their job duties. As such, they are entitled to qualified immunity, which shields them from liability for monetary damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Romero includes both constitutional and statutory claims in his complaint. It is clear that the defendants can assert a qualified immunity defense against the constitutional claim, *see Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007), but it is somewhat less certain whether they may also assert a qualified immunity defense against the RFRA claim. As the Ninth Circuit noted in 2004, at that time no "court of appeals [had] decided whether qualified immunity is available to a federal government official sued under RFRA." *Kwai Fun Wong v. United*

*States*, 373 F.3d 952, 977 (9th Cir. 2004). Since then, however, the Sixth Circuit has (albeit in an unpublished decision) affirmed a district court's decision granting qualified immunity to federal prison officials on a RFRA claim. *Weinberger v. Grimes*, No. 07-6461, 2009 WL 331632, at *5 (6th Cir. Feb. 10, 2009).

It makes sense that the defendants are entitled to qualified immunity, even on a statutory claim. After all, the Supreme Court's seminal discussion of qualified immunity in *Harlow* speaks of "clearly established *statutory* or constitutional rights." 457 U.S. at 818 (emphasis added). And, before the Supreme Court held RFRA's application to the states unconstitutional in *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997), several other courts of appeals had held that state government officials could assert qualified immunity as a defense against RFRA claims. *See, e.g.*, *Craddick v. Duckworth*, 113 F.3d 83, 85 (7th Cir. 1997); *May v. Baldwin*, 109 F.3d 557, 561 (9th Cir. 1997). There is no good reason that state officials would be entitled to qualified immunity against RFRA claims but federal officials would not. For these reasons, numerous district courts have held that federal officials are entitled to qualified immunity against RFRA claims. *See, e.g.*, *Lebron v. Rumsfeld*, 764 F. Supp. 2d 787, 804 (D.S.C. 2011); *Harrison v. Watts*, 609 F. Supp. 2d 561, 574-75 (E.D. Va. 2009); *Jama v. U.S.I.N.S.*, 343 F. Supp. 2d 338, 376 (D.N.J. 2004). Indeed, this Court has not located a single case holding otherwise. The Court therefore joins this "emerging trend of legal authority," *Jama v. United States*, No. C09-0256-JCC, 2010 WL 771789, at *8 (W.D. Wash. Mar. 2, 2010), and concludes that the defendants may assert a qualified immunity defense against Romero's RFRA claims as well as against his constitutional claims.

A two-prong inquiry guides the determination of whether a federal official is entitled to qualified immunity: (1) did the defendants violate one of the plaintiff's constitutional or statutory rights, and (2) was that right "clearly established" at the time of the violation. *See v. City of Elyria*, 502 F.3d 484, 491 (6th Cir. 2007). The Supreme Court used to require courts to answer these two questions in order. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In other words, courts had to determine whether there was a violation of the plaintiff's constitutional or statutory rights before deciding whether that right was clearly established. *Id*. In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Court loosened the leash and gave lower courts more discretion in how they conduct the qualified immunity inquiry. Now, courts may address the two prongs of the inquiry in whatever order is most appropriate "in light of the circumstances in the particular case at hand." *Id*. at 236. Thus, a court need not decide whether the plaintiff has shown a violation of his constitutional or statutory rights if it is clear that the right in question was not "clearly established" at the time of the violation. *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010).

Let us assume, then, that Romero has shown enough to establish that removing the green string from his eagle feather violated his rights under the First Amendment and RFRA. Even so, he cannot show that the rights that the defendants supposedly violated were clearly established. A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Saucier*, 533 U.S. at 205).

The first step in determining whether a right was clearly established is to define the right itself. This, in turn, requires honing in on the proper level of generality. At the

broadest level, Romero claims that the defendants violated his right to freely exercise his religion. Of course that right is clearly established—it is spelled out in the Constitution. If courts define rights at such a broad level, though, qualified immunity will virtually cease to exist. Therefore, in *Anderson v. Creighton*, 483 U.S. 635 (1987), the Supreme Court directed courts to define the right "in a more particularized, and hence more relevant, sense." *Id*. at 639. Courts must focus on the "particular action" that the defendants took and inquire whether the "contours of the right [were] sufficiently clear that a reasonable official would understand that what he [was] doing violates that right." *Id*. at 640. Thus, in *Wilson v. Layne*, 526 U.S. 603 (1999), the Court's qualified immunity analysis asked "whether a reasonable officer could have believed that bringing members of the media into a home during the execution of an arrest warrant was lawful," instead of the more general question of whether the plaintiff's Fourth Amendment right against unreasonable searches and seizures was clearly established. *Id*. at 615. Similarly, in *Safford Unified School District No. 1 v. Redding*, 129 S. Ct. 2633 (2009), the Court asked whether a thirteen-year-old student's right not to have her bra and underpants searched based on reasonable suspicion that she had prescription drugs was clearly established, instead of whether the more general Fourth Amendment right was clearly established. *Id*. at 2637, 2643-44. In both cases, the answer was no, and the government officials received qualified immunity. *Wilson*, 526 U.S. at 615; *Redding*, 129 S. Ct. at 2643-44.

Applying this principle, courts confronting free exercise claims have inquired whether a reasonable officer would have known that a particular action or deprivation would interfere with a plaintiff's religious practices. *Compare Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th

6

Cir. 2001) (granting defendants qualified immunity because Hasidic Orthodox Jewish inmate's right to grow his beard and side locks in contravention of prison grooming regulations was not clearly established), *and Keen v. Noble*, No. CV F 04-5645, 2007 WL 2789561, at *4 (E.D. Cal. Sept. 20, 2007) (granting defendants qualified immunity because inmate's right to construct a "hof"—an enclosed wooden structure used for worship—as part of his Asatru religion was not clearly established), *with Rasul v. Rumsfeld*, 433 F. Supp. 2d 58, 59, 61 (D.D.C. 2006) (denying defendants qualified immunity because Muslim detainees' right not to have their religious beards forcibly shaven or their Korans thrown in the toilet was clearly established). Thus, the relevant right in this case is not Romero's general right to freely exercise his religion, but rather his specific right not to have the green string removed from his feather.

Was this right clearly established such that it would have been obvious to a reasonable officer in the defendants' positions that removing the string was unlawful? Clearly not. There are two ways that a right can be clearly established—first, if binding precedent from the Supreme Court or the Sixth Circuit "directly establishes the conduct in question as a violation of the plaintiff's rights"; and second, even if there is no binding precedent directly on point, if the case law yields a "generally applicable principle . . . whose specific application to the relevant controversy is so clearly foreshadowed . . . as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." *Gean v. Hattaway*, 330 F.3d 758, 767 (6th Cir. 2003). Romero has not identified any legal authority clearly establishing, or even remotely hinting at, his right not to have a string attached to his feather removed. Not surprisingly, this Court's independent search has also revealed no such

precedent. Indeed, at least one court has held that Native American prisoners do not even have a clearly established right to possess a feather at all. *See Gonzalez v. Litscher*, 230 F. Supp. 2d 950, 961-62 (W.D. Wis. 2002). If there is no clearly established right to possess a feather in the first place, then there is no clearly established right to possess a feather with a length of string attached.

Not only is there no legal authority clearly establishing the right that Romero claims, but the BOP's Technical Reference Manual on Inmate Religious Beliefs only lists "feather" as a sacred item for Native Americans; it does not say anything about a string attached to the feather. R. 17-10. Put yourself in the defendants' shoes. An inmate serving a life sentence for an exceptionally violent crime has just arrived at your facility. He says that he is a Native American and he requests his religious items, one of which is a feather that has a length of string attached. Neither the BOP manual nor any court decisions establish that removing the string would interfere with the inmate's religious practices, and you know that the prison has a general policy against allowing inmates to have strings or cords of any substantial length. After all, they can be used to strangle a guard or another inmate, to pass notes between cells, and for other illicit purposes. Given this, would it be clear to you that removing the string would violate the inmate's right to freely exercise his religion? The only reasonable answer is no.

Further confirming that no reasonable officer would have known that removing the string was unlawful is Romero's own shifting characterization of how, exactly, the defendants violated his free exercise rights. Romero initially focused on the removal of the string. According to him, once the string was attached to the feather as part of a sacred

ceremony, it became one with the feather, and could only be removed in another sacred ceremony. R. 20 at 6. Now, in an affidavit that he filed on July 22, 2011, Romero for the first time claims that the feather was also desecrated because a female—defendant Bobbie Chitwood—handled it. R. 33-1. Would a reasonable officer in Officer Chitwood's position know that, by merely touching Romero's feather, she would desecrate it and thereby interfere with the exercise of his religion? Certainly not.

Granting the defendants qualified immunity in this case accords with the animating purpose behind the qualified immunity doctrine. Federal prison officials must make hundreds of decisions every day to preserve the safety and security of the penitentiary and its inmates. And when it comes to inmates' free exercise rights, officials walk through a veritable minefield of potential liability. Like Americans generally, federal inmates practice a variety of religions, from the mainstream to the not-so-mainstream. Just imagine if a prison guard had to constantly stop and investigate whether his actions might interfere with the particular religious beliefs, however quirky, of the inmate he was dealing with. The guard would be paralyzed in the performance of his job duties, especially knowing that he could face potentially ruinous civil liability in a lawsuit just like this one. Recognizing this reality, courts have developed the qualified immunity doctrine to provide federal officials with "ample room for mistaken judgments." *Humphrey*, 482 F.3d at 847. The doctrine "acknowledge[s] that reasonable mistakes can be made as to the legal constraints on particular [official] conduct," *Saucier*, 533 U.S. at 205, and strikes a balance between "protect[ing] the rights of citizens" and "the need for government officials to be able to carry out their discretionary functions without the fear of constant baseless litigation." *Keating v.*

*City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citation and quotation marks omitted). Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). For the reasons explained above, in removing the green string from Romero's eagle feather, none of the defendants in this case were "plainly incompetent," nor did they "knowingly violate the law." *Id*. They are therefore entitled to qualified immunity.

Of course, qualified immunity only shields the defendants from liability for monetary damages. It does not shield them from declaratory or injunctive relief. *Flagner*, 241 F.3d at 483. In addition to monetary damages, Romero's complaint also asks for "any relief this court deems just and equitable," R. 2 at 21, which when read very liberally could encompass declaratory and injunctive relief. However, any possible claims for such relief are now moot because Romero has been transferred to another facility and he makes no claim that there is a system-wide policy regarding the removal of string from feathers. *See Colvin*, 605 F.3d at 289 (citing *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir.1996)). Therefore, because monetary damages are the only available relief, the defendants' entitlement to qualified immunity means that Romero will not be able to recover against them at all.

One last housekeeping matter. Romero previously filed a motion for leave to amend his complaint. R. 21. Romero believes that, with his newly acquired inmate legal assistance, he will be able to sufficiently allege the involvement of at least some of the seven defendants whom the Court previously dismissed. *Id*. The Court previously denied Romero's motion for leave to amend without prejudice and advised Romero that he would have an opportunity to re-file the motion after he submitted evidence establishing that the green string was central

to his religious practices.  R. 24 at 7.  However, even if Romero could sufficiently allege that some of the dismissed defendants were involved in the decision to remove the string, those defendants would be entitled to qualified immunity for the reasons stated above.  Therefore, any possible amendment would be futile, and it is appropriate to grant summary judgment to the defendants and close this case at this time.

## CONCLUSION

Accordingly, it is **ORDERED** that the defendants' motion for summary judgment, R. 17, is **GRANTED**.  A separate Judgment will issue.

This the 4th day of August, 2011.

Signed By:
*Amul R. Thapar* AT
United States District Judge